**LaMecia McKENZIE, individually, and on behalf of all others similarly situated, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, and Does 1 through 50, inclusive, Defendants.**

**Case No. CV 10–02420 GAF (PLAx).**

United States District Court, C.D. California.

April 14, 2011.

---

Jeffrey C. Jackson, Kirk D. Hanson, Jackson Hanson LLP, San Diego, CA, for Plaintiff.

Barak J. Babcock, Ben J. Scott, Federal Express Corporation, Memphis, TN, Christopher J. Yost, Federal Express Corporation, Irvine, CA, for Defendants.

## MEMORANDUM & ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

GARY ALLEN FEESS, District Judge.

### I. INTRODUCTION

Plaintiff LaMecia McKenzie ("McKenzie") worked as a Federal Express Corpo-

ration ("FedEx") truck driver from April 2003 to July of 2009. She was classified as an hourly employee and received periodic paychecks accompanied by wage statements that purportedly explained how the amount of her pay was derived. In this lawsuit, McKenzie claims that FedEx's wage statements were, at best, ambiguous as to the hours worked and rates of pay, and that they were entirely deficient in their failure to identify the start date of the pay period. Because these deficiencies allegedly violated the requirements of the California Labor Code Section 226(a), McKenzie brings this lawsuit under the Private Attorney General Act ("PAGA") seeking to recover penalties, and as a class action under various Labor Code sections and California's Unfair Competition Law ("UCL").

The Court now has under consideration cross motions for summary judgment. McKenzie contends that she is entitled to summary judgment on her First Cause of Action asserting a PAGA claim for FedEx's wage statement deficiencies, which McKenzie contends are beyond dispute. FedEx counters by citing to California case law, which it contends establishes that the purported deficiencies are immaterial and do not violate the statutory purpose of Labor Code Section 226. FedEx therefore argues that it is entitled to summary judgment for this claim. As to this claim, the Court **GRANTS** McKenzie's motion. The undisputed facts clearly show that the wage statements are deficient in ways that have never been countenanced by any court, state or federal.

Both parties also seek summary judgment on the Second Cause of Action, under which McKenzie seeks PAGA penalties on the theory that the deficient wage statements constitute "conditions of labor" or "hours of work" that violated Labor Code Section 1198 and related regulations. FedEx counters with case law holding that

Section 1198 and related regulations address actual working conditions and the number of hours actually worked and do not address the content of wage and hour statements. The Court agrees. There is no authority for the proposition that a report of hours—as opposed to the actual hours worked or the conditions under which the labor is performed—is covered by Section 1198. Accordingly, as to the Second Cause of Action, the Court **GRANTS** FedEx's motion for summary judgment.

As to the Third Cause of Action, McKenzie seeks to recover damages for the putative class under Labor Code Section 226(e), the Court concludes that there are genuine issues of material fact for trial on the question of injury and intent that cannot be resolved on the present motion. Given the state of the current record and the relatively undeveloped state of the law on the issues of injury and knowledge and intent, the Court concludes that summary judgment is premature at this time. Therefore, all motions for summary judgment with respect to damages and injunctive relief are **DENIED**.

Finally, as to the Fourth Cause of Action, which alleges a violation of the Unfair Competition Law, McKenzie has failed to show evidence of economic injury within the meaning of UCL jurisprudence. Accordingly, FedEx's motion for summary judgment on the Fourth Cause of Action is **GRANTED**.

The Court's reasoning is set forth in greater detail below.

## II. BACKGROUND

### A. FedEx's Wage Statements

From April 2003 to July of 2009, McKenzie worked as a truck driver for FedEx and was classified as an hourly employee. (Docket No. 28, McKenzie's

Mem., McKenzie Decl. ¶ 2.) During the course of her employment, McKenzie, along with other hourly employees, received wage statements on a weekly basis which listed three categories of earnings: (1) "OvrTimePrm," (2) "Overtime," and (3) "Reg Earn." *See, e.g.,* (*id.,* Ex. 1 [Wage Statement].) With respect to the hours included in the pay period, the wage statements did not provide a separate category calculating the total hours worked by McKenzie. (*Id.*) Rather, these statements list the number of hours worked at the regular rate of pay, and state the number of overtime hours under both the "Overtime" and "OvrTimePrm" categories. (*Id.*) For example, one of McKenzie's wage statements provides that she worked a total of forty hours at "Reg Earn" rate, and lists 9.12 hours twice under the "Overtime" and "OvrTimePrm" rates of pay. (*Id.*) If an employee sought to calculate the total number of hours worked during a pay period, they would have to add the hours listed under the "Reg Earn" and "Overtime" categories. (*Id.,* Hanson Decl., Ex. 6 [Scott Depo. at 33:5–10].) However, if an employee were to add the hours corresponding to all three of these categories, the total hours worked would be incorrect. (*Id.* at 32:11–22.)

Next, corresponding to each of the three categories listed in the wage statements, the regular rate of pay was the same as the "Overtime" rate, and the "OvrTimePrm" rate was half of the regular rate. (*Id.* at 26:25–27:4.) As such, under this system, an employee would have to add the regular rate of pay to the one listed under "OvrTimePrm" to determine that his or her overtime rate is a time and a half the regular rate. (*Id.* at 29:13–30:1.)

Additionally, while the wage statements that FedEx provided to its employees list the end date for the pay period, (*id.,* Ex. 1 [Wage Statement] ), it was not until December of 2009 that these statements included a beginning date. (*Id.,* Hanson Decl., Ex. 6 [Scott Depo. at 8:23–9:5].) Because of this, an employee would have to know beforehand that the corporate pay week is Sunday through Saturday, and either consult their work schedule or a calendar to determine the date range for the pay period. (*Id.,* Ex. 5 [Dandrige Depo. at 29:16–19, 30:10–31:9].) According to FedEx's human resources advisor, the "People Manual" notified employees what the beginning and end dates were for each pay week. (*Id.* at 6:5–6, 17:20–25, 24:1–6.)

It is undisputed that FedEx implemented this pay stub system and controlled how the wage statements were formatted for its hourly employees in California. (*Id.* at 30:10–14); (FedEx's Statement of Genuine Issues in Opposition to McKenzie's Motion ("FSGIO") ¶¶ 13–14.)

## B. McKenzie's Confusion About Interpreting the Wage Statements

McKenzie has testified that she was paid every Friday while employed by FedEx. (Docket No. 44, Second Saylors Decl., Ex. 1 [McKenzie Depo. at 26:2–3].) When McKenzie received her wage statements every week, she was confused about what her overtime rate was and the total number of hours that were included in each pay period. (*Id.* at 97:23–98:3.) When McKenzie consulted with management for help in interpreting the wage statements, they were unable to satisfactorily answer her questions. (*Id.* at 34:3–37:25.) McKenzie further testified that FedEx did not provide her with any type of handbook to help interpret the wage statements. (*Id.* at 114:13–19.)

## C. Filing of Present Action

In November of 2009, McKenzie provided FedEx and the California Labor and Workforce Development Agency ("LWDA") written notice of the specific

provisions of the Labor Code that she claims FedEx violated. (*Id.* ¶ 2, Ex. 1 [Letters to LWDA].) On December 21, 2009, the LWDA provided McKenzie and FedEx written notice that it did not intend to investigate the Labor Code violations raised by McKenzie. (*Id.* ¶ 4, Ex. 3 [LWDA Written Notice].) On February 19, 2010, McKenzie filed a putative class action complaint against FedEx in the Los Angeles County Superior Court, and the case was subsequently removed to this Court on April 2, 2010. (Docket No. 1, Not., Ex. A [Compl.].) On November 2, 2010, McKenzie filed her First Amended Complaint ("FAC") seeking civil penalties under PAGA for FedEx's alleged violations of Labor Code Sections 226(a) and 1198, and including class action claims under Labor Code Section 226 and the UCL. (Docket No. 25, FAC.)

## III. DISCUSSION

### A. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Thus, when addressing a motion for summary judgment, the Court must decide whether there exists "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Id.* at 256, 106 S.Ct. 2505. The moving party can meet this burden by presenting evidence establishing the absence of a genuine issue or by "pointing out to the district court ... that there is an absence of evidence" supporting a fact for which the nonmoving party

bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the nonmoving party must put forth "affirmative evidence" that shows "that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. The nonmoving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party must show that evidence in the record could lead a rational trier of fact to find for it. *See id.* at 587, 106 S.Ct. 1348. In reviewing the record, the Court must believe the nonmoving party's evidence, and must draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### B. APPLICATION

The Court's assessment of the various causes of action turns on whether the wage and hour statements provided to its workforce meet the requirements of Labor Code Sections 226(a)(2), (a)(6) and (a)(9). The Court therefore turns first to a review of those provisions and the California case law construing their language.

#### 1. WHETHER FEDEX'S WAGE STATEMENTS VIOLATE CALIFORNIA LABOR CODE SECTION 226(A)

The First, Third, and Fourth Causes of Action arise out of alleged violations of California Labor Code Section 226(a) which requires that "employers must provide accurate itemized statements of wages to their employees. Subdivision (a) of the statute sets forth the specific information that must be included in the wage statements...." *Morgan v. United Retail, Inc.*, 186 Cal.App.4th 1136, 113 Cal.Rptr.3d 10,

14 (Ct.App.2010). Section 226(a) provides in relevant part:

(a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing ... (2) total hours worked by the employee ..., (6) the inclusive dates of the period for which the employee is paid, ... and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

CAL. LAB. CODE § 226(a). The Court therefore addresses the meaning of each of those subsections and their application in this case.

### a. Labor Code Section 226(a)(2)

▪ In a May 17, 2002 opinion letter, the Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE") provided guidance on what constitutes a violation of § 226(a)(2). *Id.* at 16 (citing DLSE Opn. Letter No. 2002.05.17 (May 17, 2002)). According to the letter,

'the obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, actual number of hours worked.... The reason for this requirement is simple enough—it is designed to provide the employee with a record of hours worked, and to assist the employee in determining whether he [or she] has been compensated properly for all of his or her hours worked. The failure to list the precise number of hours worked during the pay period conflicts with the express

language of the statute and stands in the way of the statutory purpose.'

*Id.*

The meaning of subsection (a)(2) was recently construed in *Morgan.* In that case, the California Court of Appeals addressed whether a wage statement that separately listed the total regular hours and the total overtime hours worked during a pay period violated Labor Code Section 226(a)(2). *Id.* at 17. Because this issue was a matter of first impression, the court initially interpreted the meaning of "showing" and "total hours worked," as used in Section 226(a)(2). *Id.* The court explained that the word "show" meant " 'to cause or permit to be seen,' 'to offer for inspection,' or 'to make evident or apparent: serve as the means to reveal or make visible.' " *Id.* (citation omitted). Further, the court defined the adjective "total" to mean " 'of or relating to something in its entirety,' 'viewed as an entity: complete in all details,' or 'constituting an entire number or amount.' " *Id.* (citation omitted). "Based on the plain and commonsense meaning of these words," the court concluded that the defendant's "wage statements complied with section 226 by 'showing ... total hours worked.' " *Id.*

In reaching this holding, the court found it important that the defendant's "wage statement accurately listed the total number of regular hours and the total number of overtime hours worked by the employee during the pay period, and that the employee could determine the sum or all hours worked without referring to time records or other documents." *Id.* Because the hours were accurate on the wage statements, the court explained that employees "could simply add together the total regular hours figure and the total overtime hours figure shown on the wage statement to arrive at the sum of hours worked." *Id.* The court further noted that there was

nothing in the plain language of Section 226 that required the defendant to include a separate category with the sum of the total regular and overtime hours in the wage statements. *Id.* at 18–19. In sum, the court held that based on the wage statements provided by the defendant, the employees "could confirm whether they were being compensated for all hours worked at the appropriate rates of pay without having to first calculate the sum of all regular and overtime hours worked," and thus concluded that there was no Section 226(a)(2) violation. *Id.* at 20.

Here, FedEx lists three categories of hours in its wage statements—hours for "OvrTimePrm," "Overtime," and "Reg Earn"—and fails to provide the total hours that an employee worked during a pay period. (Docket No. 33, Saylors Decl., Ex. 3 [McKenzie Depo., Ex. 16 [Wage Statement]].) Citing *Morgan*, FedEx contends that, because it "listed the number of hours worked at the regular rate of pay and the number of hours worked at the overtime rate of pay," there is no Section 226(a)(2) violation in this case even though the wage statement did not include a separate line for total hours worked. (FedEx's Mem. at 7–8.) McKenzie, on the other hand, argues that this case is distinguishable from *Morgan* because, unlike the wage statement in that case, the hours listed in FedEx's wage statements do not properly identify all hours worked. (McKenzie's Opp. at 5–6.)

McKenzie is correct. Unlike *Morgan*, the total regular and overtime hours listed in FedEx's wage statements, when added together, do not sum up to the total hours worked by the employee during the pertinent time period. Without additional information regarding the wage statement, an employee cannot simply "arrive at the sum of hours worked." 113 Cal.Rptr.3d at 17. Evidence of this can be seen in the sample wage statement provided by FedEx for McKenzie's pay period ending on March 21, 2009. (Saylors Decl., Ex. 3 [McKenzie Depo., Ex. 16 [Wage Statement]].) When the total overtime categories and the regular rate hours listed in that document are added together, the sum of these figures is 58.24, which represents a total of 40 regular hours and 18.24 overtime hours. (Saylors Decl., Ex. 3 [McKenzie Depo., Ex. 16 [Wage Statement]].) However, because information provided by FedEx (and not disclosed on the wage statement itself) explains that the overtime hours are always listed twice, the sum of all of the figures on the wage statement during the relevant period is actually 49.12, not 58.24. (*Id.*, Ex. 3 [McKenzie Depo. at 98:14–20].) Thus, the *Morgan* rationale, which contemplates that an employee can determine his or her total hours worked by summing up the figures on a wage statement without need to reference any other time records or other documents, does not apply to FedEx's somewhat idiosyncratic wage statement.[1] Accordingly, the Court finds that FedEx violated Section 226(a)(2) by failing to state the "total hours worked by [an] employee" in its wage statements. Cal. Lab. Code § 226(a).

#### b. Labor Code Section 226(a)(6)

█ Next, the Court also finds that FedEx violated Labor Code Section 226(a)(6) by failing to include the beginning date for the pay period in its wage statements until December of 2009. (Saylors Decl., Ex. 5 [Scott Depo. at 8:23–9:7]; Ex. 3 [McKenzie Depo., Ex. 16 [Wage Statement]].) As discussed above, Labor Code Section 226(a)(6) requires an itemized statement to

---

1. Evidence of this can be seen from McKenzie's deposition testimony where she had to be explained step-by-step how to calculate the total hours in one of the wage statements. (Second Saylors Decl., Ex. 1 [McKenzie Depo. at 98:14–20, 108:24–109:25].)

show "the inclusive dates of the period for which the employee is paid. . . ." CAL. LAB. CODE § 226(a)(6). In *Lopez v. G.A.T. Airline Ground Support, Inc.*, the court confronted facts similar to those presented in this case, and had to determine whether the defendant violated Section 226(a)(6) when its "wage statements indicated only the end date for each pay period, and [did] not list the beginning date." 2010 WL 2839417, at *6 (S.D.Cal. July 19, 2010). In holding that the wage statements did not comply with Section 226(a)(6), the court explained as follows:

> It is also undisputed that [the defendant's] wage statements indicated only the end date for each pay period, and do not list the beginning date. Defendants argue the pay period was sufficiently identified on the paychecks, because the paychecks provided the pay period when reviewed sequentially. However, the Labor Code requires each wage statement to provide 'the inclusive dates of the period.'
>
> Therefore, Plaintiff is entitled to summary judgment on the issue of whether Defendants furnished accurate itemized wage statements. Defendants violated Labor Code § 226(a) by failing to include the inclusive dates of the period for which employees were paid. . . .

*Id.* (citation omitted).

Here, as in *Lopez*, it is undisputed that FedEx's wage statements did not include the beginning date for the pay period until December of 2009. (Docket No. 40, McKenzie's Opp., McKenzie's Response to FedEx's Separate Statement of Undisputed Facts ("MRF") ¶ 13.) FedEx, however, argues that there was no violation of Section 226(a)(6) because based on "[t]he *Morgan* court's logic about satisfying the 226(a)(2) requirement . . . by providing the necessary information to make the required information 'evident or apparent' to the employee . . . Plaintiff's own testimony

makes clear that she knew what days she was being paid for as reflected on the wage statement provided to her. . . ." (FedEx's Mem. at 9.)

This argument is without merit. First, the *Morgan* case is inapplicable to this issue because the court addressed a very narrow question in that case: "whether the 'total hours worked' component of section 226 may be satisfied by separately listing the total regular hours and the total overtime hours worked during the pay period." 113 Cal.Rptr.3d at 17. Further, even if this Court were to apply the rationale of *Morgan*, it would still not support FedEx's argument that the inclusive dates for the pay period were "evident or apparent." (FedEx's Mem. at 9.) In concluding that the wage statement was not compliant with Section 226(a)(2), the court found it important that the total hours worked could be verified "without referring to time records or other documents." *Morgan*, 113 Cal.Rptr.3d at 17. The court also noted that "[t]he purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law. . . ." *Id.* at 19 (quoting DLSE Opn. Letter No. 2006.07.06 (July 6, 2006), at p. 2). Here, because the beginning dates for the pay period were not listed in FedEx's wage statements until December of 2009, employees had to refer to outside sources, i.e., a calendar, the "People Manual," or a work schedule, to verify which days of work were included in their paychecks. (McKenzie's Mem., Hanson Decl., Ex. 5 [Dandrige Depo. at 17:20–25, 24:1–6, 29:16–19, 30:10–31:9].)

Accordingly, consistent with *Lopez*, the Court concludes that McKenzie's wage statements violated Section 226(a)(6) by

failing to state the beginning date for each pay period until December of 2009.

### c. Labor Code Section 226(a)(9)

■ The Court also concludes that FedEx's wage statement does not comply with Labor Code Section 226(a)(9) which requires an itemized statement to show "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." CAL. LAB.CODE § 226(a)(9). Under California law, "the overtime rate is calculated by multiplying the employee's regular rate by one and one-half...." *Morgan,* 113 Cal.Rptr.3d at 19 (citing CAL. LAB.CODE § 510).

Here, contrary to Section 226(a)(9), FedEx's wage statement does not provide an accurate overtime rate because instead of multiplying the regular rate of pay by one and one-half, the pay stubs provide two overtime rate categories and they each provide corresponding rates that are either the same or half of the regular rate. (Saylors Decl., Ex. 3 [McKenzie Depo., Ex. 16 [Wage Statement]].) Moreover, the wage statement further violates Section 226(a)(9) by, as discussed above, failing to provide an accurate number of overtime hours worked during the pay period. CAL. LAB.CODE § 226(a)(9).

Thus, the Court finds that the wage statements do not comply with § 226(a)(9) either.

### 2. FIRST CAUSE OF ACTION: PAGA PENALTIES BASED ON LABOR CODE SECTION 226(A)(6) VIOLATION

Both McKenzie and FedEx move for summary judgment on the first cause of action alleged in the FAC. (FedEx's Not. ¶ 6); (McKenzie's Not. ¶ 1.) With respect to this claim, McKenzie seeks to recover civil penalties under PAGA for current and former hourly employees of FedEx for each pay period in which their wage statements failed to list the beginning date of

the pay period, and thus violated Labor Code Section 226(a)(6). (FAC ¶¶ 14–17.) Under PAGA,

> any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected ... for any violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees....

CAL. LAB.CODE § 2699(a). The provisions of PAGA apply to an alleged violation of California Labor Code § 226(a). *See* CAL. LAB.CODE § 2699.5.

### a. McKenzie Does Not Need to Prove Injury Pursuant to Labor Code Section 226(e) to Recover Under PAGA

■ Here, FedEx argues that McKenzie's PAGA claim fails because she has not proven injury as required under Labor Code Section 226(e). (FedEx's Opp. at 12–13.) McKenzie, on the other hand, contends that "[t]he injury requirement of Labor Code § 226(e) concerning the recovery of statutory penalties by employees does not apply to Plaintiff's PAGA claims because under PAGA Plaintiff seeks the recovery of civil penalties under Labor Code § 2699(f) in her role as a private attorney general." (McKenzie's Reply at 14.) Because of this, McKenzie claims that "the injury requirement of 226(e) is inapplicable to [the] PAGA claims." (*Id.*)

■ The language of the statute and controlling case law support McKenzie's position. First, PAGA "empowers or deputizes an aggrieved employee to sue for civil penalties ... as an alternative to enforcement by the State." *Villacres v. ABM Indus., Inc.,* 189 Cal.App.4th 562, 117 Cal.Rptr.3d 398, 423 (Ct.App.2010) (internal quotation, citation, and alterations omitted). PAGA does not contain any language indicating that injury within the

meaning of Labor Code § 226(e) must be shown. See also Labor Code § 2699.5 (referencing violation of Labor Code § 226(a) but omitting any reference to § 226(e)). In *Lopez,* the court addressed whether the plaintiff was entitled to civil penalties under PAGA when the defendant was found to have violated Labor Code Section 226(a). 2010 WL 2839417, at *6. The court explained that Section 2699(f) of PAGA "provides civil penalties for violation of those Labor Code provisions which do not specifically provide a penalty." *Lopez,* 2010 WL 2839417, at *6. And "[b]ecause Section 226 does not provide a penalty," the court held that Section 2699(f) penalties were available for the defendant's Section 226(a) violation. *Id.* The Court authorized the imposition of a PAGA penalty in circumstances where no Section 226(e) injury was allegedly or proved. *Id.*

Here, as in *Lopez.* McKenzie also seeks to recover penalties under Section 2699(f) of PAGA based on FedEx's violations of Labor Code Section 226(a). Consistent with the holding in that case, this Court also finds that proving a violation of subsection (a) of Section 226 is sufficient by itself to warrant civil penalties under PAGA. Section 2699.3 plainly provides that a civil action to recover penalties under Section 2699(f) requires a violation of one of the provisions listed under Section 2699.5. CAL. LAB.CODE § 2699.3(a). When looking at the provisions listed under Section 2699.5, the statute specifically lists "subsection (a) of Section 226," but not Section 226(e). That language persuades the Court that, for the purposes of recovering PAGA penalties, one need only prove a violation of Section 226(a), and need not establish a Section 226(e) injury.

Finally, the two cases cited by FedEx in support of its position that McKenzie must prove injury under Section 226(e) to recover PAGA penalties are not persuasive. For example, in *Price v. Starbucks Corp.,* the PAGA claim was entirely derivative of the other causes of action alleged in the complaint, which included a claim under Section 226. 192 Cal.App.4th 1136, 1147–48, 122 Cal.Rptr.3d 174 (Cal.Ct.App.2011). Because the court of appeals held that the lower court properly granted the defendant's demurrer and motion for summary judgment on the non-PAGA claims in that case, the court held that the derivative PAGA cause of action failed as a matter of law. *Id.*

Likewise, *Elliot v. Spherion Pac. Work, LLC* also held that the plaintiff's PAGA claim could no longer be maintained because it was wholly dependent on the other causes of action in the complaint, which the court had already held failed as a matter of law. 572 F.Supp.2d 1169, 1181–82 (C.D.Cal.2008). Here, unlike *Price* and *Elliot* the Section 226(a) violation for the PAGA claim is not dependent on the other causes of action alleged in the complaint. Rather, it is a wholly independent claim and is based on viable Section 226(a) violations. (FAC ¶¶ 14–17.) Accordingly, *Price* and *Elliot* provide no support for FedEx's position.

In sum, the Court holds that McKenzie does not need to prove that she suffered injury, as required under Section 226(e), to recover civil penalties under PAGA for the First Cause of Action.

### b. McKenzie Does Not Need to Certify Class Before Summary Judgment is Granted With Respect to the PAGA Claim

■ The parties in this case also disagree as to whether McKenzie must obtain class certification before the Court grants summary judgment for the PAGA cause of action. In *Arias v. Superior Court,* the California Supreme Court held that the requirements for a class action do not need to be satisfied for an employee to pursue a representative action against an employer

for civil penalties under PAGA. 46 Cal.4th 969, 95 Cal.Rptr.3d 588, 209 P.3d 923, 926 (2009). In so holding, the court explained, *inter alia,* that a representative action under PAGA does not give rise to due process concerns. *Id.,* 95 Cal.Rptr.3d 588, 209 P.3d at 933. As stated by the court, a plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies" with the purpose of recovering civil penalties "that otherwise would have been assessed and collected by the Labor Workforce Development Agency." *Id.* The court further explained that a PAGA claim serves to vindicate the public by imposing civil penalties, rather than conferring a private benefit on the plaintiff and the represented employees. *Id.* In light of the differences between a class action and a PAGA claim, the court concluded that while actions under PAGA "may be brought as class actions," class certification is not necessary. *Id.,* 95 Cal. Rptr.3d 588, 209 P.3d at 931–934.

The Ninth Circuit has not yet decided whether a representative action under PAGA is considered a "class action" for the purposes of Rule 23 of the Federal Rules of Civil Procedure or the Class Action Fairness Act. *Sample v. Big Lots Stores, Inc.,* 2010 WL 4939992, at *3 (N.D.Cal. Nov. 30, 2010). Several district courts in California, however, have held that the class certification requirements of Rule 23 do not apply to PAGA claims. *See Mendez v. Tween Brands, Inc.,* 2010 WL 2650571, at *3 (E.D.Cal. July 1, 2010) (citing to several district court cases in California that have come to the same conclusion). The rationale behind this view is that a PAGA suit is fundamentally different than a class action: " 'Unlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state en-

forcement agencies.' " *Sample,* 2010 WL 4939992, at *3 (quoting *Ochoa–Hernandez v. Cjaders Foods, Inc.,* 2010 WL 1340777, at *4 (N.D.Cal. Apr. 2, 2010)). Moreover, these courts, consistent with *Arias,* have held that " 'PAGA claims are law enforcement actions, *not class actions.*' " *Sample,* 2010 WL 4939992, at *3 (quoting *Mendez,* 2010 WL 2650571, at *4); *see also Cardenas v. McLane Foodservice, Inc.,* 2011 WL 379413, at *3 (C.D.Cal. Jan. 31, 2011) (holding that "[s]ince PAGA plaintiffs neither represent the rights of a class nor recover damages, a PAGA claim neither purports to be a class action nor intends to accomplish the goals of a class action. It is not brought 'on behalf of all [class] members,' so it [ ] does not fall under the terms of Rule 23. Instead, a PAGA claim is a private law enforcement action designed to further the reach of the [Labor and Workforce Development Agency ("LWDA") ].");  *see also Machado v. M.A.T. & Sons Landscape, Inc.,* 2009 WL 2230788, at *3 (E.D.Cal. July 23, 2009) (adopting the holding in *Arias*).

It is FedEx's position in this case that while PAGA claims might not be subject to Rule 23, "the fact that Plaintiff proceeds without a class being certified as to the underlying Labor Code claim (third cause of action) prevents her from having the requisite constitutional standing to prevail on her PAGA claims on behalf of other employees." (FedEx's Opp. at 18.) In support of this position, FedEx cites to *Adams v. Luxottica U.S. Holdings Corp.,* where the court held that a plaintiff pursuing a PAGA claim had to still "satisfy the stricter federal standing requirements of Article HI." 2009 WL 7401970, *6 (C.D.Cal. July 24, 2009) (internal quotation omitted). The court in *Adams* explained that because the plaintiff had abandoned the class action, she had to "either plead some other exception to the limitations on third-party standing, or plead facts show-

ing ... that the injuries allegedly suffered by other citizens actually affected Plaintifff[s] and resulted in a cognizable injury to Plaintiff[s]." *Id.* (internal quotation omitted). The court ultimately concluded in that case that the plaintiff's allegation that they had suffered the same Labor Code violations as the other "aggrieved employees," was insufficient to "create standing to represent the interests of unnamed third-parties." *Id.*

However, the decision in *Adams* was based on the incorrect assumption that "PAGA claims are representative actions brought on behalf of other aggrieved employees," rather than a law enforcement action. *Mendez,* 2010 WL 2650571, at \*4. Because of this, for example, the *Mendez* court declined to follow its holding and explained as follows:

> Because we hold that PAGA actions are not class actions, but law enforcement actions, we need not address Defendant's argument that Plaintiffs lack Article III standing to pursue their PAGA claims without certifying as a class. For the same reason, we find unpersuasive the holding of the Central District in *Adams v. Luxottica,* No. 8:07 Civ. 01465[, 2009 WL 7401970] (C.D.Cal. July 24, 2009). The *Adams* court found that PAGA claims are representative actions brought on behalf of other aggrieved employees and that, as such, they *must* meet with Rule 23 certification requirements to be brought in federal court. *Id.* at \*14. This argument is not applicable to our line of reasoning. Plaintiffs do not assert the rights of third parties,

but rather represent the interests of state labor law enforcement agencies. *Id.* at n. 4.

The court in *Cardenas* also found that "the prudential limitation against third party standing does not apply" to a representative action under PAGA because these actions are essentially law enforcement actions "to serve the public interest...." 2011 WL 379413, at \*5.

Consistent with these holdings, this Court also finds that McKenzie does not need to certify the class at this stage of the litigation to obtain summary judgment on her First Cause of Action. As discussed above, the majority view—consistent with the California Supreme Court in *Arias*—is that PAGA claims are not class actions, and because these claims are law enforcement actions there is no standing issue precluding McKenzie from pursuing this claim.

### c. Conclusion re: First Cause of Action

Consistent with the foregoing, the Court GRANTS McKenzie's motion for summary judgment on the First Cause of Action. As explained, McKenzie has adequately proven the predicate Section 226(a)(6) violation for this claim, and the various arguments[2] raised by FedEx to deny McKenzie's motion are without any merit. Finally, as required under Section 2699.3(a), it is undisputed that McKenzie also satisfied the notice requirements for pursuing the PAGA cause of action. *See* CAL. LAB.CODE § 2699.3(a); *see* (McKenzie's Mem., Hanson Decl. ¶¶ 2, 4, Exs. 1, 3); (FSGIO ¶¶ 2, 4).

**2.** In its motion, FedEx also requests that this Court exercise its discretion under Section 2699(e) of PAGA and decline to award McKenzie *any* penalties. (FedEx's Mem. at 22–24.) However, this argument is without

any basis because, as explained in *Amaral v. Cintas Corp. No. 2,* PAGA penalties *"are mandatory, not discretionary."* 163 Cal.App.4th 1157, 78 Cal.Rptr.3d 572, 617 (Ct.App.2008) (emphasis added).

**3. SECOND CAUSE OF ACTION: PAGA PENALTIES PURSUANT TO LABOR CODE SECTION 1198**

■ In the second cause of action, McKenzie seeks PAGA penalties based on FedEx's violation of Labor Code Section 1198, which she alleges incorporated by reference the I.W.C. Wage Orders requiring an employer to include in its wage statements "the inclusive dates of the pay period for which the employee is paid." (FAC ¶ 19.) Based on this violation, McKenzie requests civil penalties under PAGA. (*Id.* ¶ 21.) The California I.W.C. Wage Orders, similar to Labor Code § 226(a)(6), require every employer to provide "an itemized statement in writing showing: ... (2) the inclusive dates of the period for which the employee is paid...." *See, e.g.,* 8 CCR § 11090(7)(B)(2); *see, e.g.,* 8 CCR § 11040(7)(B)(2).

Labor Code Section 1198 states as follows:

The ***maximum hours of work*** and the standard ***conditions of labor*** fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor ***prohibited by the order is unlawful.***

CAL. LAB.CODE § 1198 (emphasis added).

This provision incorporates by reference California's Wage Orders, whereby a violation of a Wage Order also violates Section 1198:

In our view, the phrase "conditions of labor prohibited by the order," as found in sections 1198 and 1199, manifests the Legislature's intent to limit liability to *clear* violations of IWC labor conditions, rather than to impose liability only when the labor conditions are expressed in prohibitory terms.

*See Home Depot U.S.A., Inc. v. Superior Court,* 191 Cal.App.4th 210, 120 Cal. Rptr.3d 166, 171–172 (Ct.App.2010).

There is little guidance on Section 1198's application. Two California cases have held that violations of a Wage Order requiring an employer to provide its employees with suitable seating also constitutes a violation of Section 1198. *See id.* at 171–74; *see Bright v. 99cents Only Stores,* 189 Cal.App.4th 1472, 118 Cal.Rptr.3d 723, 728 (Ct.App.2010). Moreover, PAGA "civil penalties are available for a violation of section 1198 ..." based on these cases. *Bright,* 118 Cal.Rptr.3d at 730; *see also Home Depot,* 120 Cal.Rptr.3d at 175.

Here, FedEx contends that because the requirement to include date ranges on a wage statement does not pertain to "conditions of labor" or "hours of work," as required by Section 1198, this cause of action fails. (FedEx's Opp. at 20.) The Court agrees. First, this case is clearly distinguishable from *Bright* and *Home Depot,* where the Wage Order pertained to an actual working condition—providing suitable seating to employees—*Home Depot,* 120 Cal.Rptr.3d at 171–74; *Bright,* 118 Cal.Rptr.3d at 728, while the Wage Order provisions in the present action deal with the requirement to state the inclusive dates for a pay period in a wage statement. *See, e.g.,* 8 CCR § 11090(7)(B)(2); *see, e.g.,* 8 CCR § 11040(7)(B)(2).

Next, in *Home Depot,* the court explained that the I.W.C. Wage Orders set the minimum requirements with respect to three categories of employment: "'wages, hours, and working conditions' for workers in a number of industries and occupations." 120 Cal.Rptr.3d at 170 (citation omitted). Because a requirement to provide the inclusive dates in a wage statement relates to the "wages" category, rather than "hours" or "working conditions," it falls outside the purview of Sec-

tion 1198. *See* CAL. LAB.CODE § 1198. Accordingly, the Court **GRANTS** FedEx's summary judgment motion as to the Second Cause of Action.

### 4. THIRD CAUSE OF ACTION: DAMAGES PURSUANT TO LABOR CODE SECTION 226(e) BASED ON SECTION 226(a) VIOLATIONS

■ For the Third Cause of Action, McKenzie seeks to recover damages under Labor Code Section 226(e) based on the Section 226(a) violations discussed above. Labor Code Section 226(e) states as follows:

> An employee suffering *injury* as a result of a *knowing and intentional* failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars (350) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

CAL. LAB.CODE § 226(e) (emphasis added). McKenzie moves for summary judgment on behalf of the class, which she claims has suffered injury within the meaning of Labor Code § 226(e). Plaintiff cannot properly seek that relief having failed to seek and obtain class certification.

The California Supreme Court recently wrote:

> A largely settled feature of state and federal procedure is that trial courts in class action proceedings should decide whether a class is proper and, if so, order class notice before ruling on the substantive merits of the action. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 146, 172 Cal.Rptr. 206, 624 P.2d 256 (Green); Fed. Rules Civ. Proc., rule 23(c)(1)(A), 28 U.S.C.; *Hickey v. Duffy*

(7th Cir.1987) 827 F.2d 234, 237.) The virtue of this sequence is that it promotes judicial efficiency, by postponing merits rulings until such time as all parties may be bound, and fairness, by ensuring that parties bear equally the benefits and burdens of favorable and unfavorable merits rulings. The rule stands as a barrier against the problem of "one-way intervention," whereby not-yet-bound absent plaintiffs may elect to stay in a class after favorable merits ratings but opt out after unfavorable ones.

*Fireside Bank v. Superior Court,* 40 Cal.4th 1069, 1074, 56 Cal.Rptr.3d 861, 155 P.3d 268 (2007). The Court therefore reversed a trial court decision granting a merits determination before a class was certified and notice was given to the putative class.

To the extent that the Court has any discretion to proceed otherwise, the Court declines to do so in this case. Plaintiff's motion for summary judgment on the Third Cause of Action is **DENIED.**

### 5. FOURTH CAUSE OF ACTION: UCL

■ Finally, both parties move for summary judgment on the UCL cause of action. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." CAL. BUS. & PROF.CODE § 17200. To state a claim for an "unlawful" business practice under section 17200, a plaintiff must assert the violation of some other law. *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 539–40 (1999) ("By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."); *Farmers Ins. Exch. v. Superior Court,* 2 Cal.4th 377, 6 Cal.Rptr.2d 487,

826 P.2d 730, 734 (1992). Here, McKenzie is pursuing the UCL cause of action under the "unlawful" prong based on the alleged Labor Code Section 226(a) violation. (FAC ¶¶ 35–37.)

FedEx contends that McKenzie's UCL claim fails as a matter of law because McKenzie has not suffered the type of injury necessary to maintain this cause of action. (FedEx's Mem. at 24.) FedEx is correct. In 2004, the UCL's standing requirement was substantially revised: "where once private suits could be brought by 'any person acting for the interests of itself, its members or the general public, now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal. Rptr.3d 741, 749, 246 P.3d 877 (2011) (internal quotations and citations omitted); *see* CAL. BUS. & PROF.CODE § 17204. "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact; i.e., *economic injury*, and (2) show that th[e] economic injury was the result of, i.e., *caused by*, the unfair business practice...." *Id.* at 750, 246 P.3d 877 (emphasis in original). "Because economic injury is but one among many types of injury in fact, the Proposition 64 requirement that injury be economic renders standing under section 17204 substantially narrower than federal standing ..., which may be predicated on a broader range of injuries." *Id.* at 752, 246 P.3d 877.

Here, the Court finds that McKenzie has failed to prove economic injury under Proposition 64. In sum, the only types of injury that McKenzie has suffered in this case are intangible, i.e., violation of her "statutory protected right to receive an accurate wage statement;" and "mathemat-ical injury" by having to conduct discovery and mathematical computations to verify whether she was paid correctly. (McKenzie's Mem., Hanson Decl., Ex. 5 [Dandrige Depo. at 29:16–19, 30:10–31:9]; Ex. 6 [Scott Depo. at 29:13–30:1, 33:5–10].) Notably, however, McKenzie has failed to introduce evidence that she lost money or property as a result of these non-compliant wage statements. *See Kwikset Corp.*, 120 Cal.Rptr.3d at 752, 246 P.3d 877 ("lost money or property—economic injury—is itself a classic form of injury in fact.") While McKenzie's intangible injuries are sufficient for Article III standing, they fail to satisfy the more stringent standing requirement under Proposition 64. *See id.* ("Whereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involve 'lost money or property.' ") (internal quotation omitted).

Accordingly, the Court **GRANTS** FedEx's motion for summary judgment with respect to the Fourth Cause of Action.

## IV. CONCLUSION

Consistent with the foregoing discussion, the Court **GRANTS** McKenzie's summary judgment motion for the First Cause of Action, **GRANTS** FedEx's motion with respect to the Second and Fourth Causes of Action, and **DENIES** both motions with respect to the Third Cause of Action. Finally, Plaintiff is ORDERED TO SHOW CAUSE why the class action allegations should not be dismissed for failure to timely seek class certification. The response to the OSC is due on or before the close of business on Monday, April 25, 2011.

**IT IS SO ORDERED.**