[No. B223184. Second Dist., Div. Four. Dec. 22, 2010.]

HOME DEPOT U.S.A., INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DEVON HARRIS et al., Real Parties In Interest.

**COUNSEL**

Orrick, Herrington & Sutcliffe, Lynne C. Hermle, Michael D. Weil; Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Scott J. Witlin and Jessica M. Weisel for Petitioner.

No appearance for Respondent.

Dostart Clapp Gordon & Coveney, James F. Clapp, Marita Murphy Lauinger, Zachariah P. Dostart; Altshuler Berzon, Michael Rubin and Emily White for Real Parties in Interest.

**OPINION**

**MANELLA, J.**—In the underlying action, real parties in interest sought to recover civil penalties from petitioner Home Depot U.S.A., Inc. (Home Depot), under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.).[1] The trial court overruled Home Depot's demurrer to the first amended complaint, which contains a claim under PAGA based on Home Depot's alleged failure to provide seating to its employees pursuant to section 1198 and Industrial Welfare Commission wage order No. 7-2001

---

[1] All further statutory references are to the Labor Code.

(Cal. Code Regs., tit. 8, § 11070). Home Depot challenges this ruling by petition for writ of mandate or other relief. We conclude that the complaint states a claim under PAGA, and thus deny the petition on its merits.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2009, real parties in interest Devon Harris and Lawrence Winston filed their first amended complaint, which asserts a single claim under PAGA on behalf of themselves and former and current employees of Home Depot. The complaint alleges that Home Depot operates stores across the nation that sell home improvement products and hardware, including more than 100 stores in California. According to the complaint, although the cashier and counter areas within the California stores contain ample space for seats for employees, Home Depot has not provided such seats, in contravention of section 1198 and wage order No. 7-2001 of the Industrial Welfare Commission (IWC). Real parties in interest sought civil penalties under PAGA, as specified in section 2699, subdivision (f), as well as reasonable attorney fees and costs (§ 2699, subd. (g)).

Home Depot demurred to the first amended complaint, asserting that section 2699, subdivision (f), provides no remedies for the alleged violations of section 1198 and wage order No. 7-2001. After the trial court overruled the demurrer, Home Depot filed its petition for writ of mandate, prohibition, or other appropriate relief. We issued our order to show cause and temporary stay on July 30, 2010.

## DISCUSSION

Home Depot contends that the trial court erred in overruling its demurrer. As explained below, we disagree.

### A. *Governing Principles*

Generally, "[t]he standard of review for an order overruling a demurrer is de novo. The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled. [Citation.]" (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971 [114 Cal.Rptr.2d 748].)

■ Here, the issues before us hinge on the interpretation of the pertinent statutes and wage order. (*Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 734 [95 Cal.Rptr.3d 53] (*Johnson*).) Because the parties do not suggest that the statutes or wage order have been interpreted by an

agency charged with their enforcement, our inquiry is guided by the established canons of statutory construction. (See *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28 [285 Cal.Rptr. 515] (*Aguilar*).) In construing the statutes and wage order, our fundamental goal is to ascertain the intent underlying their enactment, so as to effectuate their purpose. (*Johnson, supra*, 174 Cal.App.4th at p. 734; *Aguilar, supra*, 234 Cal.App.3d at p. 28.) We look first to the language of the statutes and wage order, viewed in context, seeking a reasonable interpretation of their meaning. (*Johnson*, at pp. 734–735; *Aguilar*, at pp. 28–29.) We may also consult legislative history and other extrinsic evidence for additional guidance. (*Johnson*, at p. 734.)

### B. *Statutory Background*

We begin by examining the applicable statutes and wage order. Under the Labor Code, the Labor and Workforce Development Agency (LWDA) and its constituent departments and divisions are authorized to collect civil penalties for specified labor law violations by employers. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 370 [36 Cal.Rptr.3d 31].) To enhance the enforcement of the labor laws, the Legislature enacted PAGA in 2003. (134 Cal.App.4th at p. 370.) In so doing, the Legislature stated: "Adequate financing of essential labor law enforcement functions is necessary to achieve maximum compliance with state labor laws . . . . [¶] . . . [¶] . . . Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade . . . . [¶] . . . It is therefore in the public interest to provide that civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general . . . ." (Stats. 2003, ch. 906, § 1, p. 5179.)

The central provision of PAGA is section 2699. Subdivision (a) of the statute permits aggrieved employees to recover civil penalties that previously could be collected only by LWDA. (*Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 335 [47 Cal.Rptr.3d 614].) In addition, to address violations for which no such penalty had been established, subdivision (f) of the statute created "a default penalty and a private right of action" for aggrieved employees. (*Caliber Bodyworks, Inc. v. Superior Court, supra*, 134 Cal.App.4th at p. 375.) Section 2699 exempts violations of certain Labor Code provisions from its scope, including provisions requiring employers to post specified notices. (§ 2699, subds. (f)(3), (m).) "In general the civil penalties recovered by aggrieved employees are distributed '75 percent to the [LWDA] for enforcement of labor laws and education of employers and employees about their rights and responsibilities under [the Labor Code] . . . and 25 percent to the aggrieved employees.' (§ 2699, subd. (i).)" (*Caliber Bodyworks, Inc. v. Superior Court, supra*, at p. 375, fn. 8.)

Our focus is on subdivision (f) of section 2699, which provides in pertinent part: "For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: [¶] . . . [¶] . . . If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

The key issues concern whether the "default" remedy provided in section 2699, subdivision (f), encompasses violations of section 1198 and wage order No. 7-2001, insofar as they require employers to supply adequate seating to workers. Section 1198 is an element of the statutory framework related to the IWC, which issued the wage order. In 1913, the Legislature created the IWC, which was authorized to regulate the wages, hours, and working conditions of various classes of workers to protect their health and welfare. (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 700–701 [166 Cal.Rptr. 331, 613 P.2d 579].) To this end, the IWC promulgated so-called "wage orders," which prescribe "minimum requirements with respect to wages, hours and working conditions" for workers in a number of industries and occupations. (*Industrial Welfare Com. v. Superior Court, supra* at p. 700.)[2] Although the Legislature defunded the IWC in 2004, its orders remain in effect. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

The Legislature has established remedies for wage order violations, including criminal penalties. In 1937, the Legislature enacted sections 1198 and 1199, which provide, respectively, that certain violations are unlawful and are subject to criminal penalties. (Stats. 1937, ch. 90, §§ 1198–1199, pp. 217–218.) For purposes of our inquiry, the current versions of these statutes are materially similar to the 1937 provisions. Section 1198 provides: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Subdivision (a) of section 1199 states that it is a misdemeanor for employers and their agents to require employees "to work for longer hours than those fixed, or under conditions of labor prohibited by an order of the commission."

---

[2] The IWC was initially authorized to issue wage orders applicable only to women and children, but its jurisdiction was eventually extended to men in 1973. (*Industrial Welfare Com. v. Superior Court, supra*, 27 Cal.3d at pp. 700–701.)

■ Wage order No. 7-2001, which is applicable to the mercantile industry, contains provisions regulating working hours, minimum wages, and other matters, including seating. (Cal. Code Regs., tit. 8, § 11070.) Section 14 of the wage order states: "(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats. [¶] (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

## C. *Analysis*

■ On November 12, 2010, while Home Depot's petition was pending before us, Division Five of this district held that the default remedy stated in section 2699, subdivision (f), encompasses violations of section 1198 based on the seating requirement in wage order No. 7-2001. (*Bright v. 99¢ Only Stores* (2010) 189 Cal.App.4th 1472 [118 Cal.Rptr.3d 723] (*Bright*).) We agree with this conclusion. Subdivision (f) of section 2699 establishes civil penalties for violations of "all provisions of [the Labor Code] except those for which a civil penalty is specifically provided." As we elaborate below, section 1198 meets this description: an employer's failure to provide seating under wage order No. 7-2001 is unlawful under section 1198, but no civil penalty for such conduct is "specifically provided" in section 1198 or elsewhere. Accordingly, violations of this type are subject to the default remedy stated in section 2699, subdivision (f).

Home Depot maintains that the default remedy is inapplicable to the alleged seating requirement violations for two principal reasons. Home Depot first argues that the alleged violations, if they occurred, did not contravene section 1198; in addition, Home Depot argues that the alleged violations fall outside the scope of the default remedy because wage order No. 7-2001 provides a civil penalty for them. For the reasons explained below, we reject these contentions.

### 1. *Violations of the Seating Requirement Contravene Section 1198*

Home Depot contends that an employer's failure to comply with the seating requirement in wage order No. 7-2001 is not unlawful under section 1198 because the seating requirement is expressed in affirmative—rather than prohibitory—terms. The crux of Home Depot's argument is that because the wage order mandates that employees "shall" be provided suitable seating, rather that expressly prohibiting failure to provide such seating, the failure to

provide suitable seating is not unlawful under section 1198. As have other courts, we reject this argument.

The argument's central flaw is that it demotes mandatory labor conditions in wage orders to simple recommendations or advice when the conditions are stated in affirmative terms. Aside from the seating requirement, wage order No. 7-2001 contains mandates of this type concerning uniforms, changing rooms, and work area temperatures. Indeed, the wage order ordinarily expresses labor conditions in affirmative language, although it contains some notable exceptions, including a prohibition barring employers from directing employees to share beds in employer-supplied lodging ("Employees shall not be required to share a bed."). (Cal. Code Regs., tit. 8, § 11070, subd. 10(B).)

■ Under Home Depot's proposed interpretation of section 1198, no labor condition expressed in affirmative terms operates as a prohibition; only conditions stated in prohibitory terms—for example, the no-shared-bed requirement—effectively bar conduct, even though the conditions using affirmative language may concern matters of greater or equivalent significance. As explained in *Bright*, this interpretation is "not in keeping with the remedial purpose" of section 1198, as it renders the affirmative mandates "mere[] suggestions." (*Bright, supra*, 189 Cal.App.4th at p. 1479; see also *Kilby v. CVS Pharmacy, Inc.* (S.D.Cal., Aug. 23, 2010, No. 09cv2051-L(CAB)) 2010 U.S.Dist. Lexis 86515, p. *7 ["To interpret the Wage Orders as not prohibiting, and therefore allowing, any work condition unless the provision is phrased in the negative, i.e., using the word 'not,' would be contrary to common sense." (italics omitted)].) Indeed, our Supreme Court has long recognized that the term "shall," by its "common meaning," can be used to express mandates "prohibitory of any action conflicting with them." (*Oakland Paving Co. v. Hilton* (1886) 69 Cal. 479, 492 [11 P. 3].)

The term "prohibited," as used in section 1198, cannot be examined in isolation, but must be interpreted in context, with an eye to the statutory scheme as a whole. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Furthermore, section 1198 must be interpreted in a manner that promotes the goals of the Labor Code. (*Industrial Welfare Com. v. Superior Court, supra*, 27 Cal.3d at p. 702.) Here, the phrase "conditions of labor prohibited by the order," as found in section 1198, is properly viewed in the context of section 1199, subdivision (a), which was enacted at the same time as section 1198 and contains the same phrase. Due to the similarity in language, the Legislature's evident purpose in enacting

section 1199, subdivision (a), was to create a remedy for the labor condition violations established as unlawful in section 1198.[3]

In our view, the phrase "conditions of labor prohibited by the order," as found in sections 1198 and 1199, manifests the Legislature's intent to limit liability to *clear* violations of IWC labor conditions, rather than to impose liability only when the labor conditions are expressed in prohibitory terms. Generally, "[c]ivil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies." (*Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375].) Here, the Legislature's use of the phrase "conditions of labor prohibited by the order" is traceable to the fact that the IWC wage orders often set only minimum labor standards. (*Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d at p. 700.) When the standards are minimal, employers may properly adopt practices that exceed them. (See *id.* at p. 721 [noting that historically, employers complied with IWC workplace safety standards by meeting more rigorous standards set under the California Occupational Safety and Health Act of 1973 (Lab. Code, § 6300 et seq.)].) To avert inferences that such practices might subject employers to liability, the Legislature appears to have adopted the phrase "conditions of labor prohibited by the order," thereby establishing that liability attaches only for conduct *below* the minimal standards.

Home Depot's proposed interpretation of the phrase "conditions of labor prohibited" must be rejected, as the limit it imposes on the remedies stated in section 1199, subdivision (a) would frustrate the operation of the statutory scheme. In authorizing the IWC to establish standard labor conditions, the Legislature did not oblige the IWC to give special attention to conditions framed in prohibitory terms. (See §§ 1173–1185 [specifying IWC's procedures for issuing wage orders].) Accordingly, under Home Depot's proposal, the remedies available under section 1199, subdivision (a), would be tied to a happenstance, namely, whether the IWC's statement of a standard labor condition contains prohibitory language. The Legislature cannot have intended such an arbitrary result. (*County of Orange v. Bezaire* (2004) 117 Cal.App.4th 121, 130 [11 Cal.Rptr.3d 478] ["As between two alternative interpretations of language, courts prefer the interpretation which is the more natural and logical."].)

---

[3] We recognize that statutes imposing criminal penalties are generally subject to a strict rule of construction, under which such a statute is construed "as favorably to the defendant as its language and the circumstance of its application reasonably permit." (*People v. Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288]; see pt. C.2., *post.*) To the extent this rule may be applicable to the phrase "conditions of labor prohibited by an order" because it occurs in section 1199, subdivision (a), we conclude that Home Depot's proposed interpretation of the phrase is not reasonable, for the reasons explained below.

Home Depot suggests that the Legislature, in enacting section 1198, effectively directed the IWC to express a labor condition in prohibitory terms if the IWC intended its violation to be unlawful. This contention fails, as it places an untenable construction on sections 1198 and 1199, subdivision (a). When the Legislature enacted the provisions in 1937, the sole mechanism it created for the enforcement of the IWC's standard labor conditions was the imposition of criminal penalties, as established in section 1199, subdivision (a). (See Stats. 1937, ch. 90, §§ 95, 1198–1200, pp. 191, 217–218.) Accordingly, on Home Depot's proposed interpretation, the Legislature authorized the IWC to propound standard labor conditions that could not be enforced, namely, those stated in affirmative terms.

■ Home Depot also maintains that the seating requirement in wage order No. 7-2001 cannot function as a prohibition because it imposes an affirmative standard of reasonable conduct. However, for purposes of imposing liability, a statute can achieve the requisite clarity regarding the "conduct prohibited" (*Morrison v. State Board of Education, supra*, 1 Cal.3d at p. 231) even when the statute obliges people to adhere to a reasonable standard of conduct. As our Supreme Court has stated: "The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed, a wide spectrum of human activities is regulated by such terms . . . ." (*People v. Daniels* (1969) 71 Cal.2d 1119, 1128–1129 [80 Cal.Rptr. 897, 459 P.2d 225].)

In *Ex parte Daniels* (1920) 183 Cal. 636, 653, 637–643 [192 P. 442], the Supreme Court confronted a statute that required motor vehicle operators to drive " 'in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper,' " not to exceed specified maximum speeds for certain enumerated driving conditions (see Stats. 1917, ch. 218, § 16, p. 404). The court described the statute as "prohibit[ing] the operation of motor vehicles at any time or place at an unsafe and unreasonable rate of speed," and held that the standard of conduct it specified was sufficiently determinate to support the imposition of criminal penalties. (*Ex parte Daniels, supra*, 183 Cal. at pp. 643, 646–647.) Similarly, in *Pacific Coast Dairy v. Police Court* (1932) 214 Cal. 668, 672 [8 P.2d 140], the pertinent statute obliged persons in possession of registered milk bottles " ' "to make diligent effort to find the owner thereof and to restore or return the same." ' " In concluding the statute set a standard of conduct supporting criminal penalties, the Supreme Court characterized its purpose as a " 'prohibition of the unlicensed use of such containers.' " (*Id.* at pp. 675–679.)

In view of this authority, we reject Home Depot's contention. The seating requirement of wage order No. 7-2001, though framed as an affirmative

standard of reasonable conduct, clearly prohibits employers from failing to provide suitable seating to employees under the conditions specified in the wage order.

### 2. No Penalty "Specifically Provided" in Wage Order

■ Home Depot contends that the default remedy in section 2699, subdivision (f), is inapplicable to seating violations because wage order No. 7-2001 contains its own penalty provision. Section 20(A) of the wage order states: "In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to" enumerated civil penalties for the underpayment of wages.[4] Noting that section 20(A) states civil penalties for violations of "the provisions of this order," Home Depot argues that section 20(A) provides penalties for the *entire* wage order, including the seating requirement. Home Depot thus maintains that the default remedy under PAGA is inapplicable to seating violations because civil penalties are "specifically provided" in the wage order (§ 2699, subd. (f)).

This contention fails in light of the language of section 2699, subdivision (f), and section 20(A) of the wage order. As noted above, subdivision (f) of section 2699 creates a default remedy "[f]or *all* provisions of [the Labor Code] except those for which a civil penalty is *specifically* provided" (italics added). In view of the italicized terms, the default remedy is available for any statutory violation for which there is no specific preexisting civil penalty. Thus, in *Solis v. Regis Corp.* (N.D.Cal. 2007) 612 F.Supp.2d 1085, 1087, an employer paid an employee's wages with checks from a bank that charged a fee to cash the checks, in violation of section 212, subdivision (a)(1). The employer maintained that the default remedy was inapplicable to this violation because section 225.5 establishes penalties for " 'unlawfully withhold[ing] wages' " under section 212. (*Solis v. Regis Corp., supra,* at pp. 1087–1089.) In concluding that the violation was subject to the default remedy, the court reasoned that section 225.5 provided no "specific penalty" for the violation alleged by the employee, which did not involve the withholding of wages. (*Solis v. Regis Corp.,* at p. 1088.)

---

[4] The penalties provided in section 20(A) of the wage order are as follows: "(1) Initial Violation—$50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages. [¶] (2) Subsequent Violations—$100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages. [¶] (3) The affected employee shall receive payment of all wages recovered."

Here, section 20(A) of the wage order specifies no penalties for violations of the seating requirement in the wage order; it identifies penalties only for the underpayment of wages. Moreover, because section 20(A) states that these penalties are "[i]n addition to any other civil penalties provided by law," section 20(A) does not purport to establish a comprehensive scheme of penalties for violations of the wage order. As the appellate court in *Bright* explained, "[w]hen a statute states that its remedies are ' "in addition to any other remedies . . . which may be available to plaintiff," ' " its remedies are " 'nonexclusive.' " (*Bright, supra,* 189 Cal.App.4th at p. 1481, quoting *Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1634 [274 Cal.Rptr. 672].)[5]

Home Depot maintains that the default remedy does not supplement section 20(A) of the wage order because the legislative history of PAGA lacks evidence that the Legislature intended to authorize civil penalties for wage order violations. We disagree. As explained below, the legislative history shows that PAGA was enacted to provide a civil remedy to employees for Labor Code violations previously enforceable only through administrative or criminal actions, including violations of section 1198 arising from labor conditions prohibited in a wage order.[6]

Section 2699 originated as Senate Bill No. 796 (2003–2004 Reg. Sess.). (Stats. 2003, ch. 906, § 2.) An Assembly committee analysis of the bill identifies its sponsors as the California Labor Association and the California Rural Legal Assistance Foundation. The analysis describes the bill's purpose as follows: "The sponsors state that many Labor Code provisions are unenforced because they are punishable only as criminal misdemeanors . . . . Since district attorneys tend to direct their resources to violent crimes and other public priorities, supporters argue, Labor Code violations rarely result

---

[5] Pointing to *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 [35 Cal.Rptr.3d 243] (*Cicairos*), Home Depot argues that section 20(A) of the wage order must be construed as providing comprehensive remedies for the entire wage order. There, the court addressed a contention raised by an employer regarding the interpretation of IWC wage order No. 9-2001, which is codified in section 11090 of title 8 of the California Code of Regulations. (*Cicairos, supra,* 133 Cal.App.4th at p. 953.) The employer contended that section 3 of wage order No. 9-2001 exempted a class of workers from the entire wage order because it stated: " 'The provisions of this section are not applicable to employees [subject to specified working conditions].' " (*Cicairos,* at p. 958.) The crux of the employer's argument was that the phrase "this section" referred to the section of the California Code of Regulations containing the wage order, rather than to section 3 of the wage order. (133 Cal.App.4th at p. 958.) In rejecting this contention, the appellate court remarked, "[w]hen [the] wage order No. 9 refers to itself in its entirety, the phrase 'this order' or 'this wage order' is used." (*Cicairos,* at p. 958.) Home Depot's reliance on *Cicairos* is misplaced, as section 20(A) of wage order No. 7-2001 expressly states that the penalties it provides are *not* comprehensive, but "[i]n addition to any other civil penalties provided by law."

[6] At the request of real parties in interest, we have taken judicial notice of portions of the legislative history. (Evid. Code, §§ 452, subd. (c), 459; *Martin v. Szeto* (2004) 32 Cal.4th 445, 452, fn. 9 [9 Cal.Rptr.3d 687, 84 P.3d 374].)

in criminal investigations and prosecutions. As a result, supporters state, employers may violate the law with impunity. The sponsors also state that private actions to enforce the Labor Code are needed because LWDA simply does not have the resources to pursue all of the labor violations occurring in the garment industry, agriculture, and other industries. The bill would authorize[] civil penalties for *any* Labor Code violation currently lacking a specific penalty provision and authorizes aggrieved employees to bring private civil actions against employers." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended July 16, 2003, p. 2, italics added.)

This statement of legislative intent encompasses violations of section 1198 arising through "conditions of labor prohibited" by a wage order. Prior to PAGA, such violations were enforceable only through administrative activity or criminal actions. As violations of this type fell within the enforcement gap that PAGA was intended to close, they are subject to the default remedy established in section 2699, subdivision (f).

Home Depot contends that PAGA is properly interpreted under the rule of strict construction applicable to penal statutes. Generally, "[w]hen language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit." (*People v. Overstreet, supra,* 42 Cal.3d at p. 896.) Home Depot thus argues that the phrase "specifically provided," as used in section 2699, subdivision (f), must receive an interpretation under which section 20(A) of the wage order "specifically provide[s]" comprehensive remedies for violations of the wage order.

We reject this contention for two reasons. As our Supreme Court has explained, the rule of strict construction is ordinarily inapplicable to statutes that prescribe only civil monetary penalties. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312–313 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Statutes of this kind fall under "the general rule that civil statutes for the protection of the public are . . . broadly construed in favor of that protective purpose," absent exceptional circumstances. (*Id.* at pp. 313–314.) No such circumstances are present here. In addition, even if we were to apply the rule of strict construction, the language and purpose of PAGA do not support the interpretation that Home Depot proposes, as we have explained above.

Home Depot contends that construing the default remedy in section 2699, subdivision (f), as a supplement to section 20(A) of the wage order would lead to unacceptable results. Because the penalties stated in section 2699,

subdivision (f), are double the penalties stated in section 20(A), Home Depot argues that if the default remedy supplements section 20(A), an employer is potentially liable for twice the amount of penalties for denying seating than for underpaying wages. Home Depot maintains that such a result is "nonsensical." In addition, Home Depot argues that viewing the default remedy as a supplement to section 20(A) would result in excessive penalties against employers.

■ This contention fails, as it disregards the Legislature's broad authority to enact civil penalty statutes. "Civil penalties are inherently regulatory, not remedial," and are intended to secure obedience "to statutes and regulations validly adopted under the police power." (*People v. Union Pacific Railroad Co.* (2006) 141 Cal.App.4th 1228, 1257–1258 [47 Cal.Rptr.3d 92].) As long as the enactment of the penalties is "procedurally fair and reasonably related to a proper legislative goal," we will not second-guess the decision to impose civil penalties or examine the possibility of less drastic alternatives. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].) The principal limits on the Legislature's authority are set by the due process clauses of the federal and state Constitutions, which bar " 'oppressive' or 'unreasonable' statutory penalties." (*Hale v. Morgan*, at p. 399.) Courts examine whether a penalty provision, on its face or as applied in a specific case, imposes a penalty that exceeds these limits. (*Ibid.*)

Here, Home Depot's contention amounts to a facial challenge to the default remedy, viewed as a supplement to section 20(A) of the wage order: Home Depot argues that the default remedy provision, so understood, necessarily imposes excessive and unreasonable penalties. We disagree. In determining whether a penalty assessment is constitutionally infirm, courts examine several factors, including whether the penalty is potentially "unlimited" and whether it is "more severe than that provided . . . for other more serious transgressions under the statutory scheme." (*Starving Students, Inc. v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1357, 1368 [23 Cal.Rptr.3d 583].) However, notwithstanding the presence of such factors, a penalty provision is facially constitutional if it clearly can be applied in a constitutional manner. (*Ibid.*)

■ That is the case here. Subdivision (e)(2) of section 2699 provides that "[i]n any action by an aggrieved employee seeking recovery of a civil penalty available under subdivision . . . (f), a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Accordingly, we conclude that the default remedy penalties, viewed as supplements to the section 20(A) of the wage order penalties, are not

excessive or improper.[7] In sum, the trial court properly overruled Home Depot's demurrer to the first amended complaint.

## DISPOSITION

The petition for writ of mandate or other relief is denied. The order to show cause is discharged, and the temporary stay order is lifted upon finality of this decision. Real parties in interest are awarded their costs.

Willhite, Acting P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied January 10, 2011, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied March 16, 2011, S190270. Corrigan, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.

---

[7] For similar reasons, we reject a related contention raised by Home Depot. Pointing to several Labor Code provisions that provide civil penalties for a limited set of violations, Home Depot argues that the penalties available under section 2699, subdivision (f), if applied to the remaining violations, may exceed the established penalties. As explained above, disparities of this kind do not disturb our conclusion regarding the applicability of section 2699, subdivision (f), to seating violations under wage order No. 7-2001.