Filed 8/16/21

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KRIZEL GALLANO,<br><br>     Plaintiff, Respondent, and Cross-Appellant<br><br>v.<br><br>BURLINGTON COAT FACTORY OF CALIFORNIA, LLC,<br><br>     Defendant, Appellant, and Cross-Respondent. | A158391<br><br>(San Mateo County<br>Super. Ct. No. CIV532414) |

Defendant Burlington Coat Factory of California (Burlington) appeals from the trial court's order granting in part and denying in part its special motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1]  Krizel Gallano, a former employee, filed a putative class action complaint alleging that Burlington forces its employees to pay for business losses incurred for common on-the-job mistakes by misusing California's shoplifting statute.  In a prior opinion, we reversed the lower court's determination that Burlington's conduct amounted to extortion as a matter of law and was therefore unprotected by the anti-SLAPP statute.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. B, C and D.

[1] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.)  Krizel Gallano has filed a cross-appeal from the same order.

1

(*Gallano v. Burlington Coat Factory of Cal. LLC* (Apr. 27, 2017 No. A146335) [nonpub. opn.] (*Gallano I*).) We remanded and directed the trial court to determine whether Gallano has established a probability of prevailing on her claims. On remand, the trial court sustained Burlington's motion to strike two of the four causes of action in the complaint, and denied the motion with respect to the other two causes of action. We conclude the trial court erred in striking one of Gallano's causes of action. Accordingly, we affirm the order in part, reverse in part, and remand for further proceedings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Gallano worked as a cashier and customer service representative for Burlington at its Daly City store. (*Gallano I, supra.*) One day in March 2014, she was told to go to a room at the back of the store where she was confronted by loss prevention personnel about mistakes she purportedly committed that resulted in business losses. She was allegedly coerced into signing a statement confessing to these mistakes, which included processing a return of perfume that resulted in a loss of $400 and ringing up items that had been mismarked by other employees with the wrong price tag. (*Id.*) Gallano contends she was not accused of changing prices on merchandise herself, profiting from her mistakes, or committing any acts of dishonesty. (*Id.*) Burlington characterized these mistakes as "fraudulent" returns and other acts of "shoplifting."

After Gallano signed the statement, she was directed to sign a promissory note establishing a personal debt of $880 for the losses her employer had allegedly sustained. Gallano was told that if she paid the amount owed on the promissory note and resigned, Burlington would not pursue criminal charges against her. (*Gallano I.*) She signed a letter of resignation and was told she would receive further instructions on how to

2

make payments on her debt. She later received two civil demand letters from a law firm seeking $350 for "shoplifting, theft, or fraud" pursuant to Penal Code section 490.5. The letters stated: "This civil claim is separate from, and in addition to, any criminal proceedings that may have arisen from the incident and is not an attempt to collect a debt." (*Ibid*, bold font omitted.) No criminal proceedings were ever initiated against Gallano in connection with her employment at Burlington.

In February 2015, Gallano filed a class action complaint against Burlington. (*Gallano I, supra.*) She declared that the purpose of her complaint was to stop Burlington's " 'unlawful practice of intimidating its employees into indemnifying the company for [its] ordinary business losses.' " She alleged that Burlington has a practice of mischaracterizing routine retail mistakes as theft, such as processing fraudulent returns or selling mis-tagged items. Burlington then misuses the civil shoplifting provision (Pen. Code § 490.5) to intimidate employees into signing promissory notes that force them to shoulder the debt for the company's financial losses. (*Id*.) Gallano asserted four causes of action: (1) violations of Labor Code[2] section 2802, subdivision (a); (2) violations of section 1198 and Wage Order No 7-2001(8) (Cal. Code Regs, tit. 8, §11070); (3) violations under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); and (4) declaratory relief.

Burlington filed a special motion to strike the complaint under the anti-SLAPP statute. (*Gallano I, supra.*) Burlington argued that Gallano's claims arose out of protected activity because the challenged conduct was undertaken in anticipation of litigation. (*Id*.) Specifically, Burlington asserted that each of her claims was premised on demands for payment that

---

[2] Subsequent citations to code sections are to the Labor Code, unless otherwise specified.

3

are authorized under Penal Code section 490.5. (*Id*.). The trial court denied the motion, concluding that, as a matter of law, Burlington's conduct amounted to criminal extortion. (*Id*.)

We reversed the court's order in *Gallano I,* concluding that plaintiff's allegations did not conclusively establish that Burlington's conduct was illegal and therefore Burlington had carried its initial burden of showing that plaintiff's causes of action arise from protected speech or petitioning activity. (*Id*.) We remanded for the trial court to consider the second prong of the anti-SLAPP analysis, which addresses the probability of a plaintiff prevailing on his or her causes of action and the validity of a defendant's defenses in defeating those claims. (*Id*.)

Following our remand, Gallano moved to conduct limited discovery on Burlington's assertion of two affirmative defenses: the litigation privilege under Civil Code section 47 and the investigation privilege under Penal Code section 490.5, subdivision (f). As noted above, Burlington previously argued that its actions were protected by the litigation privilege because they were undertaken in anticipation of litigation. However, following disagreements over the discovery requests, Burlington opted to withdraw its litigation privilege defense.

Burlington continued to assert that it was immune from liability under the merchant's "investigation privilege." Under the shoplifting statute, a "merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained . . . has unlawfully taken merchandise from the merchant's premises." (Pen. Code § 490.5, subd. (f)(1)). Burlington maintained that investigating employee theft and sending civil demand letters for the recovery of theft losses are statutorily protected

4

activities under Penal Code section 490.5.  (See Pen. Code § 490.5, subd. (f)(7) ["[I]t shall be a defense to such action that the merchant detaining or arresting such person had probable cause to believe that the person had stolen or attempted to steal merchandise and that the merchant acted reasonably under all the circumstances."]).  The trial court granted Gallano's request for discovery, explaining that "if Plaintiff is able to demonstrate on the second prong that Defendant lacked probable cause, then it would negate Defendant's asserted defense of the investigation privilege."

In opposing Burlington's renewed special motion to strike, Gallano argued that the investigation privilege was inapplicable because her claims related to Burlington forcing its employees to indemnify the company for ordinary business losses, not to any detention arising from an investigation for shoplifting.  Gallano asserted that she would prevail on her Labor Code and unlawful competition claims because "Burlington required [her] to execute an $880 promissory note purporting to indebt her for [alleged] losses to the company that were, by Burlington's admissions and documents, and as demonstrated by [her] uncontroverted testimony, 'mistakes.' "  In support of her declaratory relief action seeking to void the promissory note, she noted that the website "recoverypay.com"—to which Burlington's attorney had directed her to make a payment—still showed that she owed Burlington $350.

Burlington responded that the investigation privilege barred Gallano's claims as a matter of law because her claims all challenge whether Burlington had probable cause to suspect her of theft and therefore whether the company was authorized to send the demand letters.  Burlington also argued that Gallano could not establish a probability of prevailing on her claims because she had not made any expenditure or sustained any loss

5

under the promissory note or the demand for payment under Penal Code section 490.5. There was no basis for declaratory relief either because Burlington had "unequivocally relinquished any right to enforce the promissory note" and "waived any right to recover any sums under Penal Code section 490.5." Burlington also clarified it would waive any right to fees and costs available under Code of Civil Procedure section 425.16, should it prevail on its anti-SLAPP motion.

On July 31, 2019, the trial court granted in part and denied in part Burlington's special motion to strike. The court denied Burlington's motion as to the complaint's section 2802 and declaratory relief causes of action, and granted the motion as to the section 1198 and unfair competition causes of action. In doing so, the trial court found that Gallano had "demonstrated a probability of prevailing on the merits against [Burlington's] investigation privilege defense."[3] This appeal and cross-appeal followed.

## II. DISCUSSION

"Courts analyze anti-SLAPP motions using a familiar two-step analysis." (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 592.) In the first step," ' " 'the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity.' " ' " (*Id.* at 592-593.) Given our prior holding that Burlington satisfied the first step, we are here concerned only with the second step of the analysis. "[T]he plaintiff's second-step burden is a limited one. The plaintiff need not prove her case to the court [citation]; the bar sits lower, at a demonstration of 'minimal merit' [citation]. At this stage, ' "[t]he court does not weigh evidence or resolve conflicting factual claims. Its

---

[3] Burlington does not challenge on appeal the trial court's finding that Gallano overcame the company's investigation privilege defense.

6

inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." ' [Citations.]" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891 (*Wilson*).) We review an order granting or denying a motion to strike under Code of Civil Procedure section 425.16 de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

## A. Section 2802 Claim

The trial court denied Burlington's motion to strike the complaint's first cause of action under section 2802. Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." (§ 2802, subd. (a).) Subdivision (c) defines " 'necessary expenditures or losses' " as including "all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section." (§ 2802, subd. (c).)

" 'The elements of a section 2802, subdivision (a) cause of action, as delineated by the statutory language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary.' [Citation.]" (*Nicholas Laboratories, LLC v. Chen* (2011) 199 Cal.App.4th 1240, 1249.) " 'California has a strong public policy that favors the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment.' [Citation.] [Section] 2802 codifies this policy and gives

7

an employee a right to indemnification from his or her employer. [Citations.]" (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 952.)

On appeal, Burlington focuses on the first element of a section 2802 claim and contends that Gallano cannot maintain her cause of action because she "never paid Burlington any money in relation to the promissory note or the civil demand letters, which she alleges in her complaint as the basis for her claims." Burlington argues that "[t]he mere existence of a purported debt — without an actual expenditure or loss (i.e., payment) — fails to state a claim under Section 2802."[4] Burlington relies on our decision in *USS-Posco Industries v. Case* (2016) 244 Cal.App.4th 197 (*Case*).

In *Case,* employees choosing to participate in optional training at the company's expense were required to sign a reimbursement agreement. (*Case, supra,* 244 Cal.App.4th at p. 202.) The defendant employee signed the agreement pledging to refund $30,000 of his training expenses to the employer if he was fired for cause or voluntarily left the company within 30 months of completing the training program. (*Id.* at p. 203.) Two months after completing the training program, the employee resigned from the company. (*Ibid.*) After he refused to reimburse the company for his training expenses, the company filed suit against him for breach of contract. (*Ibid.*) The employee cross-complained, asserting that the company's reimbursement agreement violated section 2802 because the agreement was "an unlawful attempt to foist workforce costs onto employees." (*Id.* at p. 205.)

---

[4] Burlington also contends that Gallano's section 2802 claim cannot be based on her BART train expenses to consult her attorneys or other costs incurred in preparing claims against her former employer. We need not address this contention because Gallano does not rely on post-employment travel costs as a basis of her section 2802 claim. Gallano does rely on these costs to assert standing on her UCL claim. See *infra* page 17.

We rejected this claim, explaining that section 2802 only applies "to expenditures made or losses sustained by an employee, and then, only to those expenditure or losses an employee must 'necessarily incur.'" (*Id.* at 205.) We concluded that the employee "made no expenditure, nor suffered any loss, in direct consequence of the discharge of his duties or in obedience to the directions of [the employer]." (*Id.* at 206.) Even if the employee "could be said to have made a qualifying expenditure or incurred a loss, such expenditure or loss was not necessary" because the training was voluntary and was not specifically required for the position the employee was seeking. (*Ibid.*)

We find *Case* distinguishable from the instant appeal. In *Case,* the employee voluntarily agreed to participate in an optional training program, understanding from the outset that his employer would expect to be reimbursed for those training costs if he chose to leave the company prematurely. The employee agreed to reimburse his employer for the amount it incurred for his specialized training, a benefit he retained despite his departure. We observed that the Legislature's interest in preventing employers from passing on certain operating expenses to employees was not implicated "by a strictly voluntary, optional training program of the sort [the employer] offered here." (*Case, supra* 244 Cal.App.4th at p. 205.)

In contrast, Gallano alleges that she did not voluntarily assume the obligation to pay the debt on the promissory note, nor did she receive any benefit in exchange for taking on this debt. Rather, the complaint alleges that she was coerced into signing the promissory note to cover ordinary and predictable business losses that should be absorbed by the company, not its employees. The complaint further alleges that Burlington has a "policy and practice" of shifting liability for ordinary business losses to its employees by

9

forcing them "to assume liability and/or pay for Burlington's losses" for transactions arising within the course and scope of their employment.  These are precisely the kinds of claims that section 2802 was intended to address. (See *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 59–60 [the purpose of section 2802 is "to protect employees from suffering expenses in direct consequence of doing their jobs"]; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 74, fn. 24 [section 2802 "shows a legislative intent that duty-related losses ultimately fall on the business enterprise, not on the individual employee"].)

Burlington emphasizes that Gallano has not "incurred" any expenditure or loss because she never paid anything pursuant to the promissory note or the civil demand letters.  Burlington's argument is not supported by a practical construction of the statute.[5]  Section 2802 requires employer indemnification for "all necessary expenditures *or* losses incurred by the employee" (§ 2802, subd. (a), italics added).  To "incur" is "to become liable or subject to: bring down upon oneself."  (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 590.)  Thus, an indemnification claim may arise under section 2802 when the employee has made a monetary payment (*i.e.*, an expenditure) for a business-related expense *or* incurred a loss in some other way—such as by becoming "liable or subject to" a charge or obligation on the

---

[5] Burlington's request for judicial notice of a legislative committee report relating to the passage of section 2802 is denied.  Burlington is precluded from raising a legislative history argument for the first time on reply. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1050 [where appellant fails to raise an argument "until its appellate reply brief," it "has forfeited the argument"].)  In any event, the statutory language is clear and does not require us to examine the legislative history of this statute.  (See *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1192.)

employer's behalf. As Gallano points out, if an employee is directed to charge business related expenses on his or her personal credit card and becomes indebted on behalf of their employer, it defies common sense to suggest that the employee has not incurred a "loss" subject to reimbursement until he or she posts payment to the credit card company.

In other contexts, courts have found that an economic loss may be incurred by the creation of a liability or debt even when payment on the debt is never made. In *In re Anthony S.* (2014) 227 Cal.App.4th 1352 (*Anthony S.*), a minor's assault on a victim caused serious injury that resulted in a hospital bill of over $400,000. At a restitution hearing, the hospital representative testified that because the victim was indigent, the hospital had written off the debt as uncollectible and would be unlikely to seek recovery from the victim in the future. (*Id.* at pp. 1354-1355.) Nevertheless, the juvenile court ordered the minor to pay $80,000 to the victim in restitution. (*Id.* at p. 1356.) On appeal, the minor argued that the restitution order was contrary to Welfare and Institutions Code section 730.6 because there was insufficient evidence the victim had incurred an economic loss. (*Ibid.*) That statute provides in relevant part: "It is the intent of the Legislature that a victim . . . who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (Welf. & Inst. Code §730.6, subd. (a).)

The appellate court upheld the restitution order, noting that "[d]espite evidence that [the hospital] had written off the charges to [the victim] as uncollectible debt, and despite evidence that seeking to collect on such debts was not the 'general' practice of the hospital, there was no evidence that [the hospital] had released [the victim] from the debt in such a way that collection would be barred by law." (*Anthony S., supra,* 227 Cal.App.4th at p. 1356,

1359. In reaching its conclusion, the *Anthony S.* court cited to an opinion that observed, "[t]o constitute evidence of a 'loss incurred,' there must be some basis to conclude that the victim is 'liable or subject to' a charge." (*Id.* at p. 1358.) Because the minor's victim had been billed and was liable for the hospital's charges, and there was no legal impediment to subsequent collection efforts, the victim had incurred an economic loss under the restitution statute even if he was unlikely to make payment on his debt obligation. (*Id.* at p. 1360.)

We see no basis for limiting the indemnification requirement under section 2802 in the manner urged by Burlington. Section 2802 is designed to protect workers from bearing the costs of business expenses that are incurred by workers doing their jobs in service of an employer. In light of the remedial purpose of statutes that regulate "wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection . . . ." (*Industrial Welfare Commission v. Superior Court of Kern County* (1980) 27 Cal.3d 690, 702.) When Gallano allegedly executed the promissory note at the direction and for the benefit of her employer, she incurred an economic loss. She became legally obligated under the promissory note and subject to debt collection efforts and possible exposure to civil liability if she did not pay. Under these circumstances, we conclude that an employee may incur a "loss" for purposes of a section 2802, subdivision (a) claim when the employer causes or directs the employee to become personally liable for a necessary business-related expense.

Burlington also asserts that it "has expressly disclaimed any intent, and has waived any right, to enforce the promissory note or to seek [Penal Code] Section 490.5 penalties or damages from Gallano in the future. . . .

12

Consequently, Gallano has not and never will make any payment or incur any loss as a result of the promissory note or the demand letters." Burlington contends on appeal that this disclaimer has essentially mooted Gallano's claims. We disagree.

Burlington's post-motion conduct in disclaiming any interest in enforcing the promissory note or the civil demand letters appears designed to preempt this lawsuit from proceeding as a class action. "Pick off" cases "arise when, prior to class certification, a defendant in a proposed class action gives the named plaintiff the entirety of the relief claimed by that individual. The defendant then attempts to obtain dismissal of the action, on the basis that the named plaintiff can no longer pursue a class action, as the named plaintiff is no longer a member of the class the plaintiff sought to represent. The cases are sometimes referred to as 'pick off' cases, as the defendant seeks to avoid exposure to the class action by 'picking off' the named plaintiff, sometimes by picking off named plaintiffs serially. [Citations.]" (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1590 (*Watkins*).) "Pick off" cases are distinguishable from cases in which a named plaintiff voluntarily settles his or her claims against the defendant after a complaint has been filed. "The 'pick off' cases present the issue of whether an individual plaintiff who has been involuntarily granted relief *necessarily* no longer possesses enough of an interest to continue to pursue the class action. Courts have concluded that the involuntary receipt of relief does not, of itself, prevent the class plaintiff from continuing as a class representative. [Citations.]" (*Watkins, supra,* 172 Cal.App.4th 1576 at p. 1590.) There is no indication that Gallano herself desires to settle her claims against Burlington and we decline to give effect to Burlington's unilateral attempt to moot her section 2802 claim at this stage of the proceedings.

13

In sum, Gallano's pleadings, declaration, and accompanying evidence support her claim that she personally incurred a necessary loss in direct consequence of the discharge of her duties or obedience to the directions of her employer. Gallano has stated a legally sufficient claim and made a prima facie factual showing sufficient to survive Burlington's special motion to strike.

**B.  Section 1198 Claim**[6]

Section 1198 authorizes the Industrial Welfare Commission (IWC) to set the "standard conditions of labor" by wage order: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." (§ 1198.)

IWC Wage Order No. 7-2001, subdivision (8), prohibits an employer from deducting from any employee's wage or requiring any employee to reimburse the employer "for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the

---

[6] Gallano contends that the trial court erred by reaching the merits of her claims once Burlington's affirmative defenses had been withdrawn or defeated. If Burlington has abandoned its litigation privilege or investigation privilege defenses, it is unclear what protected speech or petitioning activity the company relies upon to obtain relief under the anti-SLAPP statute. While we understand the point, the trial court was constrained to follow our remittitur, which directed the lower court to address Gallano's probability of prevailing on her causes of action. (*Gallano I, supra,* at pp. 11.) We need not resolve this issue because we conclude that Gallano's section 1198 claim cannot be maintained as a private right of action and therefore requires dismissal.

14

employee." Gallano asserts that she has sufficiently alleged and supported through uncontested evidence her claim that Burlington violated this wage order by seeking reimbursement for ordinary business losses resulting from conduct that was not dishonest, willful, or grossly negligent.

The trial court did not explain its reasoning for granting Burlington's motion to strike this claim. However, Burlington argued below that Gallano's claim failed as a matter of law because there is no private right of action for violation of section 1198, an argument it renews on appeal. We agree with Burlington.

In *Lu v. Hawaiian Gardens Casino* (2010) 50 Cal.4th 592, 595, the Supreme Court considered whether an employee may bring an action against his employer under section 351, which prohibits employers from taking tips that patrons leave for their employees. In finding that section 351 does not establish a private right to sue, the *Lu* court reiterated the general principle that "[a] violation of a state statute does not necessarily give rise to a private cause of action [Citation.] Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute. [Citations.]" (*Id.* at p. 596.) The high court explained that such legislative intent can be inferred by the inclusion of explicit statutory language referring to a private cause of action, or by legislative history indicating the intent to create such a right of action. (*Id.* at pp. 596-597.) Here, Gallano has not pointed to anything in the statutory text or legislative history of section 1198 that evinces a legislative intent to create a private right of action to sue for damages under section 1198.

Courts considering this question have held that an employee plaintiff seeking to bring a claim for violation of section 1198 must proceed under the

15

Private Attorney General Act of 2004 (PAGA) (§ 2698 et seq.). "PAGA was enacted to provide a civil remedy to employees for Labor Code violations previously enforceable only through administrative or criminal actions, including violations of section 1198 arising from labor conditions prohibited in a wage order." (*Home Depot U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 223 (*Home Depot*).) Section 2699, subdivision (a) of PAGA states: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

In *Jue v. Costco Wholesale Corp.* (N.D. Cal. Mar. 11, 2010) No. C-10-00033-WHA, 2010 WL 889284, the plaintiff conceded that her PAGA cause of action seeking to recover civil penalties under section 1198 was time barred. She attempted to avoid this bar by arguing she could assert an independent claim under section 1198. (*Id.* at p. *2-*3.) The district court disagreed, concluding that "a private right of action under section 1198 does not exist, except through the procedures set forth in PAGA." (*Id.* at p. *3.) The *Jue* court relied, in part, on *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365 (disapproved on other grounds in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196, fn. 8) (*Caliber Bodyworks*).

In *Caliber Bodyworks,* the appellate court distinguished between "statutory penalties . . . which were recoverable directly by employees well before [PAGA] became part of the Labor Code, and a demand for 'civil penalties,' previously enforceable only by the state's labor law enforcement agencies." (*Caliber Bodyworks, supra,* 134 Cal.App.4th at p. 377.) The court

16

observed that in order to recover civil penalties, the aggrieved employee must satisfy the prerequisite procedures in section 2699.3 by giving written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific Labor Code provision alleged to have been violated. (§ 2699.3, subd. (a)(1); *Caliber Bodyworks, supra,* at p. 376.) Section 2699.3's administrative procedures apply to recover civil penalties for violation of an assortment of Labor Code provisions, including section 1198. (See § 2699.5). Given this distinction between statutory and civil penalties, the *Caliber Bodyworks* court found that a demand for civil penalties is — in the absence of a PAGA claim — "enforceable only by the State's labor law enforcement agencies" as the code section contained no independent grant of authority to recover statutory penalties through private action. (*Id.* at p. 377).

Gallano's complaint seeks damages and civil penalties for the alleged violations of section 1198, but she does not assert this cause of action as a PAGA claim. Because Gallano has not demonstrated that her section 1198 claim as pleaded is enforceable through a private right of action, the trial court did not err in striking this claim.

## C.     UCL Claim

In her cross-appeal, Gallano contends that the trial court erroneously struck her third cause of action for violation of the UCL. The trial court did not explain its reasoning for doing so in its order. However, at the hearing on Burlington's motion, the court suggested that Gallano lacked standing to maintain her claim because she had not proffered any evidence of an economic loss.

On appeal, Gallano contends that she presented evidence of economic loss when she became indebted to Burlington for $880 after signing the promissory note, and when she incurred travel expenses to consult legal

17

counsel on these matters. She emphasizes that the trial court found she was likely to prevail on her section 2802 claim, which is sufficient to establish standing under the UCL. We agree with Gallano that she has demonstrated a probability of prevailing on her claim under the UCL.

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' ([Bus. & Prof. Code] § 17200.)" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*)). In *Kwikset*, the California Supreme Court examined the standing requirements of the UCL in light of voter approval of Proposition 64 in 2004, which limited private standing to any " 'person who has suffered injury in fact and has lost money or property' " as a result of unfair competition. (*Ibid*.; see also *Animal Legal Defense Fund v. LT Napa Partners LLC* (2015) 234 Cal.App.4th 1270 (*LT Napa Partners*).) "*Kwikset* interpreted the Proposition 64 requirement that a party has 'lost money or property' to mean that a party must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.' " (*LT Napa Partners,* at p. 1279, citing *Kwikset, supra,* 51 Cal.4th at p. 322.) "*Kwikset* pointed out that ' "[i]njury in fact" is a legal term of art' that makes reference to one of the requirements for federal standing under article III, section 2 of the United States Constitution" and that in selecting this phrase, the drafters and voters of Proposition 64 "intended to incorporate the established federal meaning." (*Ibid*.)[7]

---

[7] Injury in fact has been described for purposes of standing in federal court as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or

18

"*Kwikset* noted that such 'economic injury . . . is itself a classic form of injury in fact,' and 'the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact.' " (*LT Napa Partners, supra*, 234 Cal.App.4th at p. 1279, citing *Kwikset, supra,* 51 Cal.4th at p. 323-324.) The *Kwikset* court added that injury in fact is " 'not a substantial or insurmountable hurdle' " and allegations of " ' " 'some specific, "identifiable trifle" of injury' " ' " would suffice. (*Ibid.*, citing *Kwikset*, at p. 324.) Thus, "[i]f a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." (*Id.* at 325; see also *LT Napa Partners,* at p. 1279.)

At the second step of the anti-SLAPP analysis, we must accept plaintiff's evidence as true, and determine only whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. (*Wilson*, *supra*, 7 Cal.5th at p. 891.) At this stage of the litigation, our only task is to determine whether Gallano has established that her cause of action has "minimal merit," not whether she will ultimately succeed in proving her claim. (*Ibid.*)

In light of our conclusion that Gallano has established a probability of prevailing on her section 2802 claim, we conclude that the economic loss established by that claim provides an adequate basis for standing under the UCL. There are "innumerable ways" in which "lost money or property" can be shown under the UCL, including where plaintiffs "(1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or

---

"hypothetical," ' [citations]." (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560, fn. omitted.)

19

(4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Kwikset, supra*, 51 Cal.4th at p. 323.)

Gallano's complaint and declaration provide evidence that the promissory note obligated her to pay Burlington the balance on her account and subjected her to debt collection efforts and possible legal liability. She contends that Burlington's forced indebtedness and collection efforts constituted illegal acts that exposed Gallano to an imminent loss of money or property and required her to expend money to defend her interests. We conclude that the complaint adequately alleges an invasion of a legally protected interest sufficient to support standing under the UCL.

Several authorities cited by Gallano support her assertion of standing. In *Rubio v. Capital One Bank* (9th Cir. 2010) 613 F.3d 1195, 1204, the Ninth Circuit found the plaintiff had adequately alleged standing under the UCL when her credit card company gave her the choice to either pay off her balance and cancel her account or accept a fraudulently imposed higher interest rate. The appellate court concluded that the plaintiff suffered economic injury under either scenario, because the plaintiff would be forced to pay a higher interest rate or would lose access to the credit that had previously been extended to her. (*Ibid.*) In *Rex v. Chase Home Finance LLC* (2012) C.D. Cal. 905 F.Supp.2d 1111, 1147 (*Rex*), the district court held that standing under the UCL was satisfied by allegations that the defendants damaged the plaintiff's credit by reporting false information to credit reporting bureaus. Finally, in *Lane v. Wells Fargo Bank, N.A.* (N.D.Cal. June 21, 2013, No. C 12-04026 WHA) 2013 U.S.Dist.LEXIS 87669, at *31-32, the district court held that a class of borrowers who had not yet paid an allegedly improper expense charged by the bank on their mortgage accounts had

20

standing to sue under the UCL because they would eventually have to pay that expense to remove the lien against their property.

In each of these cases, allegations of a "loss of money or property" did not require an actual expenditure of money by the plaintiff to confer standing to support a UCL claim. Here, Gallano has adequately alleged that Burlington's actions, in forcing her to sign the promissory note, exposed her to a multitude of non-trivial financial and legal consequences. (See *Rex*, *supra*, 905 F.Supp.2d at p. 1145 ["Defendants' argument fails because an Article III injury exists where there is a dispute between parties as to the amount one owes under a contract, regardless of whether that amount has been 'paid or not.' "].)

Burlington's reliance on *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847 is unpersuasive. The appellate court found that the plaintiff lacked standing to bring a claim under the UCL based on a publisher's practice of sending invoices before the end of a free trial period to mislead its customers into making premature payments. (*Id.* at 857.) *Hall* is inapposite because it involved an ordinary invoice for a product received by the plaintiff in exchange, as opposed to a legally enforceable promissory note securing an allegedly unlawful debt for which Gallano received no benefit in return.

As discussed above, the fact that Burlington elected, well after this lawsuit was commenced, to refrain from undertaking further efforts to enforce the promissory note does not negate the complaint's allegation that Burlington violated the law with respect to Gallano and other putative class members. Accordingly, we reverse the trial court's order striking the complaint's third cause of action under the UCL.

21

**D.     Declaratory Relief Claim**

Gallano's fourth claim for declaratory relief seeks an order from the court declaring that Burlington's promissory note "is void as a matter of law" because it violates section 2802.[8]  She also seeks a declaration that the promissory note is invalid under section 2804 because it purports to waive an employee's indemnity rights.  The trial court concluded that Gallano stated a meritorious claim for declaratory relief.  We agree.

Code of Civil Procedure section 1060 provides, in relevant part: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . .  may bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . . including a determination of any question of construction or validity arising under the instrument or contract.  He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time.  The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment."

On appeal, Burlington renews the contentions made above, namely that Gallano failed to prove she had incurred a loss or expense and that the company's "unequivocal waiver" of any right to enforce the promissory note in the future has mooted her claim.  As we discussed, Burlington's post-motion

---

[8] Section 2804 provides: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."

22

conduct does not eliminate the controversy as Burlington has not conceded that the promissory note is void and unenforceable as a matter of law.  Our task here is to determine whether Gallano has stated a claim, not to adjudicate it.  We conclude Gallano has satisfied her pleading burden and has submitted sufficient evidence to demonstrate a probability of prevailing on the merits of her claim.

## III.  DISPOSITION

The order is affirmed in part and reversed in part.  The parties are to bear their own costs on appeal.

_____

SANCHEZ, J.


We concur.


_____

HUMES,  P.J.


_____

BANKE, J.


(A158391)

24

San Mateo County Superior Court

Honorable Nancy L. Fineman and Honorable V. Raymond Swope

Counsel:

Morgan Lewis & Bockus, Joseph Duffy and Joseph Bias for Defendant, Appellant and Cross Respondent.

Olivier Schreiber & Chao, Monique Olivier and Christian Schreiber; Legal Aid at Work, Chris Ho and Galen Arkush Ages for Plaintiff, Respondent and Cross-Appellant.